IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FLEET CAPITAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:05-cv-176-MJR |
| ) | |
| BILL SIMON EQUIPMENT, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a report and recommendation on the Motion to Foreclose Loan (Doc. 67 ), filed by Plaintiff Fleet Capital Corporation ("Fleet Capital")[1] on May 29, 2007; the Motion to Foreclose Judgement Lien (Doc. 75), filed by Fleet Capital on June 26, 2007; the Motion to Strike (Doc. 79), filed by Defendant Cornerstone Bank and Trust, N.A. ("Cornerstone") on July 2, 2007; and the Motion to Strike or in the Alternative Motion to Dismiss Motion to Foreclose Judgement Lien (Doc. 80), filed by Defendant Bill Simon Equipment, Inc., ("BSE") on July 6, 2007.

For the reasons set forth below, it is **RECOMMENDED** that the Motion to Strike (Doc. 79) be **GRANTED**, that the Motion to Strike or in the Alternative Motion to Dismiss Motion to Foreclose Judgement Lien (Doc. 80) be **GRANTED**, that the Motion to Foreclose Judgement Lien (Doc. 75) be **DENIED**, that the Motion to Foreclose Loan (Doc. 67 ) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law:

---

[1] In Plaintiff's May 29, 2007, filing with the Court, Plaintiff discloses that Fleet Capital Corporation is now known as Banc of America Leasing & Captial, LLC. For purposes of clarity, this Order will refer to Plaintiff as Fleet Capital.

FINDINGS OF FACT

**Procedural History**

In March of 2005, Plaintiff Fleet Capital filed this diversity action against BSE alleging breach of contract, fraudulent misrepresentation, conversion, failure to account, and otherwise turn over monies or property owed (Doc. 1). William Simon ("Bill Simon"), an individual and registered agent for BSE, was not named as a defendant in this action. In June of 2006, judgement was entered in favor of Fleet Capital against BSE in the amount of $487,964. Following the entry of judgement, Fleet Capital filed a Citation to Discover Assets against BSE. As of today, Fleet Capital has not received payment from BSE and the $487,964 judgment remains outstanding.

On May 29, 2007, Fleet Capital filed a Motion to Foreclose Loan (Doc. 67 ), requesting that the Court foreclose a loan made by BSE to Bill Simon to partially or completely satisfy the judgment. The motion indicates that Bill Simon asserts that this loan was previously repaid, thus leaving nothing to foreclose.

On June 26, 2007, Fleet Capital filed a Motion to Foreclose Judgement Lien (Doc. 75). This motion states that BSE granted a mortgage and assignment of rents in favor of Cornerstone concerning a certain property BSE owned (identified in the motion as "Third Property")[2], and seeks a forced sale of the property to satisfy Fleet Capital's outstanding judgement against BSE.

On July 2, 2007, Defendant Cornerstone filed a Motion to Strike (Doc. 79), requesting that the Court strike Fleet Capital's Motion to Foreclose Judgment Lien (Doc. 75) as an improper attempt to foreclose on real property in violation of Illinois state law, and also asserting that this Court lacks jurisdiction to order such a foreclosure in this action.

---

[2] The motion lists this "Third Property" address as 1222 Adams Court, Alton, IL 62002.

On July 6, 2007, BSE filed their own Motion to Strike or in the Alternative Motion to Dismiss Motion to Foreclose Judgement Lien (Doc. 80), which also asserts that Fleet Capital's Motion to Foreclose Judgment Lien (Doc. 75) must be stricken for failure to comply with Illinois state law and because this Court lacks jurisdiction to order the remedy requested in the motion.

On August 22, 2007, the Court held a hearing on these motions and heard extensive testimony. These motions are fully briefed and ready for the Court to rule.

**Substantive History**

In addition to the parties' briefs on these motions, the Court heard extensive testimony during its motion hearing concerning Bill Simon's representation that he paid back the loan made to him by BSE. The evidence before the Court demonstrates the following:

BSE's 2003 federal income tax return includes an entry under "other assets," listing a balance due from Bill Simon, individually, in the amount of $1,113,615. BSE's 2004 federal income tax return also includes an entry under "other assets," listing a balance due from Bill Simon, individually, in the amount of $1,078,638.00.

A BSE balance sheet dated July 31, 2006, lists "other assets" as $0.00, but includes as a current liability $76,612.88 due from "Bill Simon Personal." Bill Simon asserts that he paid BSE $ 76,204 from proceeds from the sale of his individual personal property, including proceeds from the sale of two life insurance policies ($18,933); his Liberty Bank stock ($25,000); a Sea-Doo watercraft ($3,500); a backhoe ($22,000); and of his golf cart ( $1600). Bill Simon also asserts that he used funds acquired from other bank accounts ($5,171) and obtained personal loans from Liberty Bank totaling $285,058, which funds were deposited in BSE's bank accounts. Bill Simon also testified that McTayld, LLC, transferred to BSE through direct deposit the total sum of $ 441,080.00, which sum purportedly represents funds loaned to

Simon for the purpose of repaying his debt to BSE. Accordingly, Bill Simon asserts that he has paid and accounted for all amounts he owed BSE. The parties dispute the characterizations of these transfers, and whether they legally extinguished the debt owed by Bill Simon to BSE.

CONCLUSION OF LAW

**Motion to Foreclose Judgement Lien (Doc. 75), Motion to Strike (Doc. 79), Motion to Strike or in the Alternative Motion to Dismiss (Doc. 80)**

The threshold question at issue in these motions is whether Fleet Capital may use this forum to foreclose on certain real property owned by BSE to satisfy its judgement lien against BSE. Cornerstone argues that because Plaintiff seeks to foreclose on real property, it is a new action not derivative of the existing case which judgement was taken, such that a motion to foreclose a judgement lien is not the proper remedy. Cornerstone asserts that Fleet Capital must follow the procedures set forth in the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 et seq. Moreover, Cornerstone asserts that this Court lacks jurisdiction over the real property sought in the foreclosure. BSE makes similar arguments, but also adds that because Fleet Capital did not comply with Illinois law regarding initiation of foreclosure proceedings, their motion also fails under Rule 69 of the Federal Rules of Civil Procedure.

Fleet Capital responds that its motion to foreclose a judgment lien against certain real property is analogous to a garnishment to collect a judgment, and, therefore, is a part of the original action in which judgment was rendered, such that it need not be brought in a separate action.

For the reasons that follow, the Court finds that Fleet Capital must initiate a separate proceeding to foreclose on the property at issue in its motion. The legal analysis for determining the proper method of collection of any judgment lien begins with Rule 69(a). The applicable section of Rule 69 reads as follows:

**Rule 69. Execution**

**(a) In General.**

(1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1) (Revised Dec. 1, 2007). Rule 69 establishes a "writ of execution" as the presumptively proper method for enforcing a federal court ordered money judgment. Here, Fleet Capital is not simply attempting to execute on the real property, but rather is asking the Court to foreclose and order a sale of the property. Additionally, Fleet Capital asks the Court to find that there is no right of redemption, either give it possession of said real property or appoint a receiver and, finally, award it attorneys' fees and costs.

While Rule 69 establishes the writ of execution as the method of enforcing a money judgment, it does not, however, create any mechanisms to enforce the writ. Rule 69 does provide, though, that proceedings ". . . must accord with the procedure of the state where the court is located" unless a federal statute governs. This means that the rule "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits" at the time the remedy is sought." Peacock v. Thomas, 516 U.S. 349, 359 n.7 (1996). Thus, judgment creditors in federal court must avail themselves of state enforcement mechanisms. See Cacok v. Covington, 111 F.3d 52, 53-54 (7th Cir. 1997).

In this action, the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1505 et seq. applies. Under this statute, the judgment debtors and lienholders have certain rights, including the right of redemption. This Illinois statute serves to protect property owners, as well as mortgagors, and it is neither the letter or spirit of Rule 69 to undermine this purpose. Plaintiff's

response that the action sought by its motion is analogous to a garnishment proceeding and, therefore, need not comply with the Illinois Mortgage Foreclosure Law is without merit. Unlike a typical garnishment action where the only entity whose rights are affected is the judgment debtor, here, Cornerstone's interests may be negatively affected by a foreclosure and forced sale of this property where Cornerstone was not a party to the original action.

Lastly, as to the issue of jurisdiction, this Court has jurisdiction under Rule 69(a) to issue a writ of execution or other remedy. Court have construed the alternate remedy to the writ very narrowly, holding that some other method would be appropriate only when a writ of execution is inadequate. See <u>Andrews v. Roadway Exp. Inc.</u>, 473 F.3d 565, 568 (5th Cir. 2006); See also <u>Hilao v. Estate of Marcos</u>, 95 F.3d 848, 854 (9th Cir. 1996). Moreover, the Court agrees with BSE that:

> Fleet fails to identify any statutory provision or other legal precedent which allows it to terminate the interest in or rights to real property held by third parties who are not parties to the underlying judgment, by way of a mere motion in contravention of Illinois' law regulating foreclosure proceedings.

Reply to Fleet Capital's Response to BSE and Cornerstone's Motions to Strike Motion to Foreclose Judgment Lien, p.3, ¶6. (Doc. 82). Rule 69(a) establishes that the usual recourse under the rule is a writ of execution and that the writ will be enforced using the local state practice for executing judgments. Fleet Capital could have used this process, but did not.

In light of the procedural requirements stated above, the Court **RECOMMENDS** that the Motion to Strike (Doc. 79) be **GRANTED**, that the Motion to Strike or in the Alternative Motion to Dismiss Motion to Foreclose Judgement Lien (Doc. 80) be **GRANTED**, and that the Motion to Foreclose Judgement Lien (Doc. 75) be **DENIED**.

**Motion to Foreclose Loan (Doc. 67)**

In this motion, Fleet Capital, as a successor in interest to BSE, requests that the Court order foreclosure on a personal loan made from BSE to Bill Simon. As the factual background above demonstrates, there is a definite factual question of whether Bill Simon has extinguished his debt to BSE by repaying his loans. Fleet Capital maintains that the loans from BSE to Simon remain unpaid and, therefore, that Fleet Capital must be permitted to foreclose on these loans. Bill Simon maintains that all amounts due and owing BSE have been repaid. There is little doubt that this factual question turns on how these loans are characterized, which would no doubt require much substantive review of the evidence in this case.

It is no accident that such a fact-intensive review of the evidence, including witness testimony, seems out of place in a post-trial proceeding; this is not the appropriate proceeding to adjudge the substantive rights of non-parties to this action. Such post-judgement proceedings to collect on a judgment are brought before the Court as an extension of the Court's ancillary jurisdiction. The purpose of the ancillary jurisdiction of the federal courts is to enable a federal court to render a judgment that resolves the entire case before it and to effectuate its judgment once it has been rendered. Peacock v. Thomas, 516 U.S. 349 (1996); Lucille v. City of Chicago, 31 F.3d 546, 548 (7th Cir.1994); Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 282 (4th Cir. 2002); McAlpin v. Lexington 76 Auto Truck Stop, Inc., 229 F.3d 491, 501 (6th Cir. 2000). Ancillary jurisdiction is not meant to enable a federal court to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes; Courts may assert ancillary jurisdiction where it is necessary to implement the court's judgment. See Dale M. ex rel. Alice M. v. Board of Educ. Of Bradley-Bourbonnais High School Dist. No. 307, 282 F.3d 984 (7th Cir. 2002).

Although neither of the parties to this action have raised the issue of jurisdiction, "federal judges must respect the limits on their adjudicatory power even if all litigants are content with the decision." Myers v. County of Lake, Ind., 30 F.3d 847, 849 (7th Cir. 1994), cert. denied, 513 U.S. 1058 (1994). This Court finds that pursuant to the Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349 (1996), it lacks jurisdiction to decide this matter.

In Peacock, the Supreme Court held that subsequent suits to enforce judgments entered in prior federal actions must have their own source of federal jurisdiction when they involve new theories of liability, such as fraudulent conveyances or piercing the corporate veil. Id. at 358-59. Indeed, Peacock states,

> We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in H.C. Cook Co. v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). In Beecher, the plaintiff obtained a judgment in federal court against a corporation that had infringed its patent. When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation, alleging that, during the pendency of the original suit, they had authorized continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. We agreed with the Circuit Court's characterization of the suit as "an attempt to make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." Id., at 498-499, 30 S.Ct., at 602. Beecher governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment.

Peacock, 516 U.S. at 357-358.

In this case, the parties entered into a agreed judgment on July 24, 2006. That judgment provided that BSE pay damages and attorneys' fees to Fleet Capital totaling $487,964. Bill Simon, individually, was not a party to that agreed judgment or the underlying action. On November 6, 2006, Fleet Capital issued a "Notice of Citation to Discovery Assets to Third

Party" directed to Bill Simon (Doc. 48). On December 20, 2006, Bill Simon appeared in federal court in East St. Louis pursuant to this <u>third-party</u> citation to discovery assets.[3] This is the first appearance by Bill Simon, individually, in this matter.

The Court is persuaded that <u>Peacock</u> and <u>Beecher</u> are fully applicable in this case. Just as in those cases, Fleet Capital's Motion to Foreclose Loan (Doc. 67) is nothing more than an attempt to make the Bill Simon the individual answerable for the judgment already obtained against BSE the Corporation. A post-judgment proceeding in this action is not the proper forum to decide the substantive issue of whether Bill Simon, as a non-party to the original action, did or did not pay off his debt to BSE; and it would extend beyond this Court's ancillary jurisdiction to do so. Accordingly, it is **RECOMMENDED** that Motion to Foreclose Loan (Doc. 67 ), filed by Fleet Capital be **DENIED**.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion to Strike (Doc. 79) be **GRANTED**, that the Motion to Strike or in the Alternative Motion to Dismiss Motion to Foreclose Judgement Lien (Doc. 80) be **GRANTED**, that the Motion to Foreclose Judgement Lien (Doc. 75) be **DENIED**, that the Motion to Foreclose Loan (Doc. 67 ) be **DENIED**, and that the Court accept the foregoing findings of fact and conclusions of law..

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1, the parties shall have ten (10) days after the service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and

---

[3] It should be noted that Bill Simon has appeared throughout this proceeding when requested.

Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 29, 2008**

               s/ *Donald G. Wilkerson*
               **DONALD G. WILKERSON**
               **United States Magistrate Judge**